UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WALTER LEE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | 15-CV-2032 |
| | ) | |
| v. | ) | |
| | ) | |
| HARTSHORN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE.**

Plaintiff filed this case pro se from his detention in the Vermilion County Jail on claims of deliberate indifference to his serious medical and dental needs during his incarceration in the Vermilion County Jail from June 2, 2011 to December 19, 2011, and again from January 23, 2013, to August 20, 2013. (12/17/15 Order ¶ 4; Am. Compl. p. 17.) Plaintiff was since transferred to prison and has been released.

Defendants move for summary judgment. At this stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

Plaintiff asserts that at the time of his detentions he had type II diabetes, high blood pressure, heart disease/cardiomyopathy, daily rectal bleeding, dermatitis, tooth decay, high anxiety, stress, hair loss, pain, unhealthy weight loss/gain, chronic joint pain, psoriasis, hyperglycemia, hypoglycemia, pain/numbness/swelling in feet, legs, and rectum, poor/blurred vision, ringing ears, dizziness, loss of energy, and kidney damage. (Am Compl. pp. 18, 20, 22, 35.) He contends that he did not receive adequate treatment for these conditions. Part of that treatment, he maintains, would have been a low fat, low cholesterol, and low salt diet of 2700 calories per day with fresh fruits, fresh vegetables, and whole grains. (Am. Compl. pp. 29, 33, 42.)

As an initial matter, the Court agrees with Defendants that Plaintiff's claims arising from his medical care in 2011 are barred by the two-year statute of limitations. Bryant v. City of Chicago, 746 F.3d 239, 241 (7th Cir. 2014)(In Illinois, § 1983 actions are subject to the two-year statute of limitations in 735 ILCS 5/13-202).

Plaintiff asserts that he is entitled to equitable tolling because he tried to file a complaint about his 2011 medical care on July 3, 2013, and August 3, 2013, but the complaint was purportedly either lost or not mailed by Jail staff. Plaintiff may mean to assert equitable estoppel rather than equitable tolling. Equitable tolling applies if a Plaintiff is unable to determine the information essential to bringing a claim, which is not the case here. Liberty v. City of Chicago, --- F.3d ---, 2017 WL 2771712 *2 (7th Cir. 2017). Equitable estoppel applies when a "'party's improper conduct has induced the other into failing to file within the statutory period.'" Id.; Momo Enterprises, LLC v. Banco Popular of North America, 2017 WL 1178530 * 12 (N.D. Ill. 2017)(not published in Federal Reporter)("Equitable estoppel is available where a defendant takes active steps, beyond the wrongdoing underlying the complaint, to prevent a plaintiff from filing suit.").

Plaintiff has not established grounds for either equitable tolling or equitable estoppel. The exhibits referenced (Pl.'s Exhibits 40-49) do not support a conclusion that Plaintiff tried to mail a complaint about his 2011 medical care to the federal court in July or August 2013. Those exhibits regard Plaintiff's attempts to verify

mailings regarding his criminal proceeding and complaints to the U.S. Department of Justice, the A.C.L.U., the Illinois Attorney General, the Director of Illinois County Jail Standards, and the Judicial Inquiry Board. (d/e 71-2, p. 3-5, 16.)

Further, Plaintiff does not explain why, if his attempts to file a complaint in federal court were thwarted, he waited more than 17 months after he was transferred out of the Jail to file his 2011 claims. Plaintiff contends that he had limited access to the law library during that time, but Plaintiff did not need the library to file a complaint that he purportedly had already drafted. *See also* Tucker v. Kingston, 538 F.3d 732, 735 (7th Cir. 2008)("[W]e have held that a prisoner's limited access to the prison law library is not grounds for equitable tolling.") Plaintiff's claims arising from his 2011 detention are barred by the statute of limitations.

Plaintiff's claims regarding his 2013 detention are timely. To survive summary judgment, though, Plaintiff must have admissible evidence that Defendants were deliberately indifferent to his serious medical need. Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 301 n.2 (7th Cir. 2010); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001). Plaintiff's evidence must allow a reasonable

inference that "(1) an objectively serious injury or medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." Chapman, 241 F.3d at 845.[1]

Initially, Defendants Hardy, Rademacher, and Walker lack personal responsibility. Kuhn v. Goodlow, 678 F.3d 552. 556 (7th Cir. 2012)("'An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.'")(quoted cite omitted). Nurse Hardy stopped working at the Jail before 2013. Nurse Rademacher and Nursing Student Walker saw Plaintiff only once, on February 4, 2013, for a physical examination of Plaintiff under the supervision of Defendant Galloway. (Defs.' Undisp. Facts 3-8.) That examination revealed tooth decay and high blood pressure, for which Defendant Galloway prescribed Lisinopril. Defendant Galloway saw Plaintiff again on February 20, 2013, regarding Plaintiff's tooth decay, and

---

[1] Because Plaintiff was a detainee rather than a convicted prisoner, Plaintiff's claim is governed by the Fourteenth Amendment, not the Eighth Amendment. However, as of this writing, there is no practical difference between the legal standards. Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 301 n.2 (7th Cir. 2010); Collins v. Al-Shami, 851 F.3d 727, 731 (7th Cir. 2017)(declining to decide whether Kingsley v. Hendrickson, 135 S.Ct. 2466 (2015) requires, for detainee's medical claims, an objective reasonableness standard versus a deliberate indifference standard); Phillips v. Sheriff of Cook County, 828 F.3d 541, 544 (7th Cir. 2016)(applying deliberate indifference standard to detainees' claims of lack of medical care, but acknowledging Kingsley).

determined that Plaintiff did not have a dental emergency. On this record, Nurse Galloway was the one who made the treatment decisions regarding Plaintiff, not Defendants Rademacher or Walker. Summary judgment is granted to Defendants Hardy, Rademacher, and Walker on the grounds that they lacked personal responsibility.

Moving to the medical conditions Plaintiff alleges he had, Plaintiff has no evidence to support his allegations that he had or has heart disease, diabetes, psoriasis, hyperglycemia, hypoglycemia, poor or blurred vision, or kidney damage as alleged in his Amended Complaint. Plaintiff also has no evidence that he presented to Defendants in 2013 with complaints about anxiety, stress, hair loss, pain, weight gain or loss, ringing in ears, dizziness, chronic joint pain, pain/numbness/swelling in feet, legs or rectum, or loss of energy. Additionally, Plaintiff's new claim that the soy in the meals caused him problems is not part of this case, but the claim is based on speculation anyway.

There is evidence that Plaintiff had high blood pressure in 2013, which Defendants already knew about in 2011. However, Plaintiff does not dispute that he was prescribed Lisinopril for his

high blood pressure but then directed Defendants to stop giving him this medication because Plaintiff did not want to pay for the medication.  On February 21, 2013, Plaintiff wrote an inmate request stating "Do not give me any more blood pressure medicine. I will not be paying for this and do not bill my account."  (Defs.' Ex. 36; Pl.'s Dep. 97.)  Defendants are not liable for Plaintiff's refusal to take his prescribed high blood pressure medicine.

There is also evidence that Plaintiff probably had high cholesterol during his 2013 detention, based on cholesterol tests done when Plaintiff was transferred from the Jail to prison.  However, Plaintiff has no evidence that Defendants were aware of Plaintiff's high cholesterol, or even that Plaintiff was aware of his high cholesterol until those tests were performed.  There can be no deliberate indifference to a problem without knowledge of the problem.

Regarding Plaintiff's claim about the meals, Plaintiff grievances on this subject stated that the meals were not in compliance with nutritional standards, were served cold, and did not contain enough calories.  (Pl.'s Exhibits Y, 9; Defs.' Ex. 39.)  Plaintiff has no admissible evidence to support his claim that the meals were

nutritionally or calorically inadequate, and no admissible evidence that the meals were contraindicated for the only medical condition Defendants knew about—Plaintiff's high blood pressure, for which Plaintiff refused to take medicine anyway.  Plaintiff has no evidence that the meals put him at risk of any harm or caused him any harm, much less that Defendants knew of such a risk.

That leaves for discussion Plaintiff's tooth decay, scalp dermatitis, and rectal bleeding.  According to the Mayo Clinic website, "seborrheic dermatitis is a common condition that mainly affects your scalp.  It causes scaly patches, red skin and stubborn dandruff." (www.mayoclinic.org, last visited 7/21/17.)  "Sulfur 8" is the only permitted hair product allowed to be brought into the Jail.  (Defs.' Undisp. Fact 18.)  Sulfur 8 is a medicated, anti-dandruff, hair and scalp conditioner.  www.amazon.com (last visited 7/21/17).

In February 2013, Plaintiff complained, in part, about scalp sores.  Defendant Galloway informed Plaintiff that no extra Sulfur 8 was on hand to give to Plaintiff and asked if Plaintiff had anyone who could bring him some.  Plaintiff responded that he did not have anyone who might bring him some, and Defendant Galloway

suggested that he ask another inmate to share. (Defs.' Undisp. Facts 74-75.) Plaintiff left the Jail in August 2013, so presumably he had no Sulfur 8 for the seven months that he was in the Jail.

Defendants argue that a jury could not find that Plaintiff's seborrheic dermatitis was a serious medical need. *See, e.g.,* Ware v. Randolph, 2008 WL 4412117 (C.D. Ill)(prisoner's scalp dermatitis was not serious medical need, nor was there deliberate indifference); Cole v. Litscher, 2005 WL 1075515 (W.D. Wis. 2005)(not published in Fed. Rptr.)(dandruff is not a serious medical need where it caused mild discomfort)(*citing* Boring v. Kozakiewicz, 833 F.2d 468 (3rd Cir. 1987)(prisoner's seborrheic dermatitis was not a serious medical need). However, whether this condition was serious in the constitutional sense depends on the severity, and the record does not illuminate that issue sufficiently. Lewis v. McLean, --- F.3d ---, (7th Cir. 2017)(life-threatening injury not required; lack of treatment that results in "'further significant injury or unnecessary and wanton infliction of pain.'" can violate Eighth Amendment)(quoted cite omitted).

The record is also not developed enough on Plaintiff's claim about his decaying teeth. Plaintiff was suffering from tooth decay

for his entire seven month stay at the Jail, and Defendant Galloway noted in February 2013 that the bottom molars were in severe decay. (Defs.' 35.) Tooth decay can be a serious need, even if the need is not an emergency. Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010)("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection.") The Jail appears to have a policy that dental care for non-emergencies is provided only if an inmate pays $50 for the care or has insurance. (Defs.' Undisp. Fact 20.) If there is a dental emergency, the inmate is taken to the hospital. (Defs.' Mot. Summ. J. p. 23.)

Defendant Galloway suggested to Plaintiff that he try to obtain dental care from "Aunt Martha's" upon Plaintiff's release. Aunt Martha's provides dental and health care services on a sliding fee scale fee. www.auntmarthas.org (last visited 7/21/17). Defendant Galloway also told Plaintiff that an appointment would be made for him at Aunt Martha's, but that there was a waiting list. Plaintiff told Defendant Galloway that he already had an appointment at Aunt Martha's scheduled for October 2013 but was hoping the

appointment could be moved up.[2]  However, Plaintiff did not make the October 2013 appointment because he was transferred from the Jail to prison in August 2013.  (Defs.' Undisp. Fact 73.)  Whether Defendant Galloway tried to move that appointment up is not in the record.  Plaintiff had three teeth removed in 2015 during his incarceration in prison.  (Defs.' Undisp. Fact 87.)  The severity of Plaintiff's tooth decay is not clear, nor is it clear whether Plaintiff had the $50 to pay for dental care, or whether Nurse Galloway had the authority and ability to schedule Plaintiff for dental care before the October 2013 appointment.

The Court also has questions about Plaintiff's rectal bleeding claim.  Plaintiff's complaints of rectal bleeding appear confined to 2011, but Plaintiff's rectal bleeding problems were arguably present in 2013 based on the colonoscopies and colorectal surgeries he received after his transfer to prison.  (Pl.'s Ex. EE, GG, HH, JJ, MM, OO.)  Defendants do not address this claim, other than to assert that they have set forth all of their interactions with Plaintiff during his detention.  The Court is wondering whether Plaintiff complained

---

[2] Plaintiff made this appointment in 2011 after his release from Jail.  The October 2013 appointment was the earliest he could get.  (Pl.'s Dep. 111.)

about his rectal bleeding in 2013 and, if so, what response he received.

**IT IS ORDERED:**

**(1)** Plaintiff's motion for an extension to file a response to Defendants' reply is denied. (d/e 73.) Briefing on the summary judgment motion closed with Defendants' reply. See CDIL-LR 7.1(D).

**(2)** Defendants' motion for summary judgment is granted in part and denied in part (d/e 57) as follows:

    **(a)** Summary judgment is granted to Defendants on Plaintiff's claims arising from his 2011 detention in the Vermilion County Jail.

    **(b)** Summary judgment is granted to Defendants Hardy, Walker, and Rademacher.

    **(c)** Summary judgment is denied to Defendant Galloway on Plaintiff's claims arising from Plaintiff's dermatitis, tooth decay, and alleged rectal bleeding during his 2013 detention in the Vermilion County Jail.

  **(d)**  Summary judgment is granted on Plaintiff's claims regarding his medical conditions in 2013 other than his dermatitis, tooth decay and rectal bleeding.

**(3)**  By August 31, 2017, Defendants may file another summary judgment motion addressing the remaining claims.  This deadline will be stayed if the parties notify the Court that they are interested in a settlement conference with the Magistrate Judge.

**(4)**  A final pretrial conference is scheduled for October 2, 2017 at 1:30 p.m.

**(5)**  The jury selection and trial are scheduled from November 7-9, 2017, at 9:00 a.m.

**(6)**  **The clerk is directed to correct the spelling of Defendant "Rodemaker" to Defendant "Rademacher."**

ENTERED:  July 24, 2017

FOR THE COURT:   **_s/Sue E. Myerscough_**
             SUE E. MYERSCOUGH
             UNITED STATES DISTRICT JUDGE